UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:18-CR-172-KAC-DCP |
| MICHAEL A. LAPAGLIA, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned on the question of whether Defendant Michael LaPaglia violated his conditions of release and, if he did, whether there are additional conditions that will assure the safety of the community during Defendant's continued release. *See* 28 U.S.C. § 636(b). Defendant appeared before the undersigned on February 25, 2021, for a hearing on the Petition for Action on Conditions of Pretrial Release [Doc. 35], filed on February 16, 2021. Assistant United States Attorney Anne-Marie Svolto appeared on behalf of the Government. Attorney Francis L. Lloyd, Jr., represented Defendant, who was also present. On November 19, 2018, the undersigned placed Defendant on conditional release pursuant to an Order Setting Conditions of Release [Doc. 8]. The conditions of Defendant's release include that he submit to testing for a prohibited substance and not obstruct testing and that he truthfully answer all inquiries from his supervising officer. At Defendant's change of plea hearing later that same day, United States District Judge Pamela L. Reeves allowed the Defendant's release on the conditions imposed by the undersigned.

At the February 25 hearing, the Government moved to modify Defendant's pretrial release conditions to include home detention and location monitoring, contending that Defendant failed to

comply with a directive from his pretrial supervision officer to report for a drug screen on December 10, 2020, claiming that he has tested positive for COVID-19 a few days prior, and further, that he submitted a falsified a medical record as verification of his COVID-19 test. Defendant did not concede the allegations in the Petition but stated he was invoking his Fifth Amendment right against self-incrimination and would not present testimony regarding the allegations.

## I. POSITIONS OF THE PARTIES

At the hearing, the Government argued that Defendant is a danger to the community, but that additional restrictions could be imposed to reasonably assure the community's safety. AUSA Svolto stated that Defendant signed a plea agreement, which was filed on October 25, 2018. Defendant entered a guilty plea on November 19, 2018, before District Judge Pamela Reeves. His sentencing hearing was scheduled for April 9, 2019, and was subsequently continued and rescheduled several times. On September 24, 2020, Defendant's case was reassigned to District Judge Thomas Phillips [Doc. 30], and most recently it was reassigned to District Judge Katherine Crytzer on January 7, 2021 [Doc. 32]. Defendant's change of plea hearing is currently scheduled for April 2, 2021. The Government suggested that home detention and location monitoring should be considered as additional conditions to reasonably assure the safety of community because Defendant continues to treat patients under his probationary medical license.

The Government presented the testimony of FBI Special Agent Joelle Vehec. SA Vehec testified to a complaint that the FBI received from a female patient who had received a COVID-19 test and treatment by Defendant at her home in December 2020. Her concerns included that Defendant did not wear a mask or gloves during the examination, Defendant did not have a working thermometer, and Defendant gave her some pills that he dispensed from large bottles of

pills that he pulled from his bag and "dumped into smaller unmarked bottles." SA Vehec stated that she referred the complaint to an investigator with the Tennessee Department of Health. SA Vehec testified that she learned Defendant had been providing COVID-19 tests to people at homes and businesses. Specifically, the Government submitted a record demonstrating that Defendant was at SL TN, a manufacturing company in Clinton, Tennessee, on multiple days in December 2020 administering COVID-19 tests to employees, including the time period in which Defendant had reported to Officer Wilson that he was in quarantine, after testing positive for COVID-19 [Govt. Exh. 3].

Officer Wilson testified that on December 9, 2020, she instructed Defendant to report for a drug screen the following day. She stated Defendant told her he had tested positive for COVID-19 and would be quarantining, so she excused him from the drug screen and asked him to provide a copy of his positive test result for verification. After not receiving the requested documentation, Officer Wilson made a second request four or five days later, and finally received a document from Defendant on January 11, 2021. The document provided by Defendant reflected that he had tested positive for COVID-19 at the Neighborhood Urgent Care ("NUC") in Jacksboro, Tennessee on December 10, 2020, which was the day after Defendant reported to Officer Wilson that he had received a positive test result [Govt. Exh. 1]. Officer Wilson contacted NUC and asked whether there was a record of Defendant's visit on December 10, 2020. The NUC business manager ran a search using Defendant's name, date of birth and social security number and found no record of Defendant in their system. Officer Wilson testified that the nurse whose signature is reflected at the bottom of the document confirmed that it was her signature but pointed out that the patient information at the top of the form was not in her handwriting. The business manager advised Officer Wilson that the nurse who signs the test form would also fill out the patient information at

3

the top of the form. Officer Wilson compared the handwritten patient information at the top of the NUC test form to the handwritten work logs she had required Defendant to submit and observed similarities [Govt. Exh. 4].

Officer Wilson also testified that she had inquired of Defendant about his obligation to sign a lifetime monitoring agreement with the Tennessee Medical Foundation ("TMF"),[1] as required by an Order of the Tennessee Department of Health. When she made an initial inquiry in August 2019, Defendant told her that he would not need to be monitored by TMF until after he was sentenced in the instant case. Officer Wilson stated that her reading of the Order did not provide for a delay in the start of monitoring and that Defendant recently told her he signed up for the TMF monitoring agreement last month.

Defendant presented the testimony of Ms. Tina Marie Ahrens, who along with her husband, operates Volunteers for Recovery ("VFR"), a residential recovery program for men and women with seven Knoxville locations. Ms. Ahrens testified that the majority of VFR clients are uninsured and often need assistance with obtaining mental health medications once they start the VFR program and until they can get established with a mental health program provider, which often takes months. She stated that she has known Defendant for approximately a year and that he will visit VFP clients on site. Ms. Ahrens testified that Defendant typically charges $50 per visit but will still treat VFP clients even if they are unable to pay. She further stated that Defendant is also her personal physician.

Defendant proffered the August 13, 2019 Final Order of the Tennessee Board of Medical Examiners, which placed his medical license on probation for a minimum period of five years [Def. Exh 1]. The Order further provides that "[Defendant] shall enter a lifetime monitoring

---

[1] It was explained that TMF assists in monitoring physicians with past addiction problems, including providing drug testing and monitoring meeting attendance requirements.

agreement with TMF." [*Id.* at 6]. He also proffered a letter dated January 11, 2021 from TMF setting forth requirements for his random drug screens [Def. Exh. 2] and a copy of his TMF Physician's Health Program Aftercare Agreement, which was incomplete and unsigned [Def. Exh. 3].

During argument, AUSA Svolto stated that Defendant has pled guilty to conspiracy to distribute controlled substances and healthcare fraud and that per 21 U.S.C. § 841(b)(1)(C), this is a mandatory detention case. *See* 18 U.S.C. § 3143(a)(2). She noted, however, that this is a unique case in that the Government did not move for detention when Defendant entered his change of plea because he was not facing a lengthy prison sentence and he was in a cooperative posture. She argues that now, two years post change of plea, Defendant's noncompliance and efforts to cover up his untruthfulness call into question whether he can be adequately supervised. She noted concerns for community safety and requested that Defendant be placed on home confinement with location monitoring.

Defendant argued that the lab results [Govt. Exh. 4] demonstrate that his drug screens have been negative. He further emphasized that his probationary medical license does not prohibit home visits to care for patients or place any limitations on his practice of medicine.[2] He asserted that a condition of home confinement would be equivalent to banishing him from practicing medicine. Defendant argued that recently, the following more restrictive version of his conditions were imposed: providing self-employment records and following a "color-coded" urinalysis testing system. Defendant further noted that he had recently undertaken maintaining a closer relationship with the TMF as well as the Tennessee Board of Health. Defendant asserted that these enhanced

---

[2] It was noted throughout the hearing that Defendant does not have a DEA license and, thus, would be unable to dispense controlled substances.

conditions are the equivalent of the close supervision requested by the Government. Accordingly, he asks the Court to permit him to continue on release under the conditions currently imposed.

The parties appeared before the undersigned on March 1, 2021, for the Court to follow up on the matter of Defendant's release. At that time, the Court informed the parties that it would be filing a Report and Recommendation on the Petition and the issue of Defendant's continued release, for ultimate determination by the District Judge. The Court ordered that Defendant LaPaglia could remain on conditional release, pending Judge Crytzer's ruling on the petition, with the addition of two conditions. The Court required that Defendant LaPaglia be restricted from providing any medical diagnosis or treatment of patients, with the exception of administering COVID-19 testing in a business setting, unless and until the TMF Aftercare Agreement is fully implemented and the Court approves the lifting of this restriction.[3] The Court also required that Defendant LaPaglia execute a waiver of confidentiality for his TMF records to allow the United States Probation Office to communicate with TMF and to allow TMF to advise whether the Defendant is in compliance with the TMF Aftercare Agreement and to report to the United States Probation Office any positive drug tests. The parties agreed to these amended conditions and the Court entered an amended Order Setting Conditions of Release [Doc. 40].

Also, at the March 1 hearing, Mr. Lloyd stated that the TMF Aftercare Agreement is in place and that he would supplement the record of the February 25 hearing with a signed copy of the TMF Aftercare Agreement. On March 3, 2021, Defendant filed a copy of the signed TMF Aftercare Agreement under seal [Doc. 42]. The agreement requires Defendant to submit to drug screening, to attend group support meetings, and to meet with a TMF case manager at least

---

[3] The Court emphasizes that before the Defendant may practice medicine in any capacity other than providing COVID-19 testing at a business entity, he must file a motion to have this restriction lifted.

quarterly.[4]  The agreement does not impose the requirement that Defendant have a work site monitor at this time.  The agreement reflects that it was signed by Defendant on January 25, 2021.

## II.  ANALYSIS AND FACTUAL FINDINGS

"A person who has been released under [18 U.S.C. §] 3142 . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a).  After a hearing, the Court *shall* revoke the defendant's release and detain the defendant, if it finds probable cause to believe the defendant has committed another crime while on release or clear and convincing evidence that the defendant has violated any other condition of release and the Court also finds "there is no condition or combination of conditions of release that will assure the person will not flee or pose a danger to the safety of any other person or the community" or that "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2).

In the instant case, the Court conducted a hearing pursuant to 18 U.S.C. § 3148 to determine whether Defendant LaPaglia violated the terms of his pretrial release and, if a violation has occurred, whether sanctions are appropriate.  Based upon the evidence presented as detailed above, the Court finds by clear and convincing evidence that Defendant violated the conditions of release that he submit to drug testing and not obstruct or attempt to obstruct his drug testing, and that he answer all questions from his supervising probation officer truthfully.  In this regard, the Court finds that Defendant obstructed his drug testing and was untruthful with Officer Wilson when in

---

[4] Defendant initially submitted an incomplete and unsigned version of the TMF Aftercare Agreement [Def. Exh. 3].  The Court permitted Defendant LaPaglia to file the completed and signed version of the TMF Aftercare Agreement under seal, because it contains personal healthcare information [*see* Docs. 41 & 43].  The Court finds it necessary to discuss the terms of the TMF Aftercare Agreement generally, because the Defendant argues that monitoring by TMF, along with his current conditions, is sufficient to ensure the safety of the community.  Additionally, the provisions of the TMF Aftercare Agreement, particularly the condition of having a work site monitor, were discussed openly at the hearing.

response to her instruction on December 9, 2020, to report for testing the following day, Defendant told her that he had already tested positive for COVID-19 and was in quarantine. Then, after two requests from Officer Wilson, Defendant finally submitted a COVID-19 test result form purportedly from the NUC, which could not be verified by NUC because they had no record of Defendant. Further, as noted by the NUC nurse whose signature is on the form, the patient information at top of the form would have been filled out by her, but it is not her handwriting. As observed by Officer Wilson, the patient information appears to have been written by Defendant based on similarities to Defendant's handwriting appearing on his self-employment work logs. Finally, during the period that Defendant claimed to be in quarantine, he was working on site and at SL TN administering COVID-19 tests to employees. Thus, there is abundant, clear and convincing evidence to support the Court's finding that Defendant violated the conditions of his release.

The Court also finds that Defendant LaPaglia is a danger to the community when practicing medicine. In this regard, the Court finds that complaints by a patient reveal he is not taking proper precautions during home visits to protect patients from the spread of disease and suggests that he may not be properly handling medication. Moreover, Defendant's conduct in falsifying a medical record (his purported positive COVID-19 test result) shows that he is willing to abuse his special skills as a medical doctor to avoid drug testing and supervision by the United States Probation Office.

The Court next turns to the question of whether conditions exist that would reasonably assure Defendant would not be a danger to the community. The Government asks the Court to order home detention and location monitoring for Defendant so that he would have to advise his supervising officer of his whereabouts when he goes out on a medical call. While the Court agrees

that the concern for the community is heightened when Defendant makes house calls without any supervision whatsoever, the Court does not feel that just knowing his whereabouts appropriately addresses the concern.  Moreover, the type of supervision that would provide the Court with reasonable assurance that Defendant is posing no danger would be that provided by another medical professional or someone approved by the TMF to serve in such capacity.

Accordingly, the Court **RECOMMENDS** that the District Judge find that Defendant LaPaglia has violated his conditions of release but that additional conditions may be imposed to assure the safety of the community.  The Court recommends the following additional conditions: First, Defendant LaPaglia shall be restricted from providing any medical diagnosis or treatment of patients, with the exception of administering COVID-19 testing at a business entity, unless and until the TMF Aftercare Agreement is fully implemented and work site monitoring is imposed. Defendant argues that a relationship with TMF is already in place.  However, the TMF Aftercare Agreement does not impose a work site monitor provision.  At the February 25 hearing, Defendant argued that he is a solo practitioner and cannot afford to hire a monitor.  However, the Court finds an appropriate monitoring system of the type described in the TMF Aftercare Agreement is necessary to assure the safety of the community.

The Agreement provides that a suitable monitor "should have frequent contact with [Defendant], should preferably be in the same field, should be a neutral party (not a partner, political enemy, golfing buddy, etc.), be sensitive to confidentiality, and be approved by the TMF PHP" [Def. Exh. 3, p.6]."[5]  The Court finds it appropriate for the work site monitor provision of the TMF Agreement to be in place, in order to provide some type of work monitoring suitable for

---

[5] While the Aftercare Agreement does not require the work site monitor to be a medical professional, the Court finds that Ms. Ahrens would likely not be a suitable monitor, because Defendant LaPaglia is her personal physician.

9

his type of solo medical practice. The undersigned further recommends that until the work site monitor provision of the TMF Aftercare Agreement is in place, Defendant continue to be restricted to conducting COVID-19 testing at businesses such as he has been doing as SL TN, where there is an on-site monitor who will be able to verify Defendant's work log. Once the work site monitor provision of the TMF Aftercare Agreement is in place, Defendant may file a motion with the Court to seek modification of his conditions to include resuming providing medical treatment other than COVID-19 testing.

Additionally, the Court imposed the condition that Defendant waive confidentiality for his TMF records to allow the United States Probation Office to communicate with TMF and to allow TMF to advise whether the Defendant is in compliance with the TMF Aftercare Agreement and to report to the United States Probation Office any positive drug tests. The Court recommends the continuation of this condition. The Court finds that the imposition of these two additional conditions—limiting his medical employment to COVID-19 testing in a business setting unless the work site monitoring provision of the TMF Aftercare Agreement is in place and requiring a confidentiality wavier for TMF records—will serve to protect the community and assure Defendant's compliance with his conditions of release.

### III. CONCLUSION

The Court finds Defendant LaPaglia has violated his conditions of release. However, the Court finds there are conditions that will assure Defendant LaPaglia will not pose a danger to the safety of any other person or the community. Accordingly, the Court **RECOMMENDS** that Defendant LaPaglia's conditions of release be **MODIFIED** to include the following two conditions:

(1) Defendant LaPaglia is restricted from providing any medical diagnosis or treatment of patients, with the exception of administering COVID-19 testing in a business setting, unless and until the work site monitoring provision of TMF Aftercare Agreement is implemented and the Court approves the lifting of the limitation to COVID-19 testing, and

(2) Defendant LaPaglia shall execute a waiver of confidentiality for his TMF records to allow the United States Probation Office to communicate with TMF and to allow TMF to advise whether the Defendant is in compliance with the TMF Aftercare Agreement and to report to the United States Probation Office any positive drug tests.[6]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).