# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| Plaintiff, ) | |
| ) | No. 3:18-CR-172 |
| v. ) | |
| ) | JUDGE CRYTZER |
| MICHAEL LAPAGLIA ) | |
| Defendant. ) | |

## UNITED STATES' MOTION FOR UPWARD VARIANCE

COMES NOW, the United States of America, by and through Francis M. Hamilton III, the Acting United States Attorney for the Eastern District of Tennessee, and moves this Court for an upward variance from the defendant's advisory Guideline range, pursuant to 18 U.S.C. § 3553(b) and U.S.S.G. §5K2.0 (authorizing the Court to impose a sentence outside the guidelines range if the court finds an "aggravating or mitigating circumstance" that is not taken into consideration adequately by the Sentencing Commission in formulating the Guidelines). In support thereof, the United States would show that the facts and circumstances of this case as well as the history and characteristics of the defendant warrant an upward variance of at least six months.

A variance is appropriate when the Guidelines Sentence fails to reflect properly the factors outlined in 18 U.S.C. § 3553(a). *Rita v. United States*, 551 U.S. 338, 351 (2007). In considering an appropriate sentence, the Court may consider any information about the background, character, and conduct of the defendant, without limitation. 18 U.S.C. § 3661; *Pepper v. United States*, 131 S. Ct. 1229 (2011) (emphasis added).

The facts and circumstances of this case, the criminal history of the defendant, and the characteristics and history of the defendant warrant an upward variance. The advisory Guidelines range in this case fails to provide for a sentence that adequately considers the 3553(a) factors. The defendant faces an advisory Guidelines range of six to 12 months' imprisonment.

(Doc. 21, PSR, ¶.) The sentence is in Zone B of the Guidelines and a probationary sentence is authorized. (*See id*.) The defendant pleaded guilty to an Information and had agreed to cooperate.[1]

The defendant is a drug dealer. In 2014, the defendant's unlawful possession of marijuana, valium and various paralytic and sedative agents resulted in the loss of his DEA Registration number. (Doc. 21, PSR, ¶¶ 53, 73, pgs. 10, 15.) Thus, the defendant lost his ability to write prescriptions for controlled substances. But this did not deter the defendant. Instead the defendant devised a way around that limitation: he conspired with another medical doctor to establish a "concierge" suboxone clinic- traveling to opioid-addicted patients to treat their addiction. In actuality, the defendant met patients at his home and in parking lots – just like a typical drug dealer. (*Id*. at ¶ 12, pg. 5.) The defendant wrote prescriptions for controlled substances, but because the defendant was unauthorized to prescribe controlled substances, the defendant used pre-signed prescription pads (signed by Dr. Charles Brooks who was authorized to write prescriptions). No medical exams were performed, no drug tests were taken, no mental health treatment was offered, and no steps were taken to ensure patients did not divert their prescriptions. Patients communicated with the defendant using text messaging and WhatsApp, just like typical drug dealers use. (*Id*. at ¶19, 20.) The defendant's criminal conduct was, simply, a brazen misuse of his medical license that endangered the health and well-being of his pill-seeking patients. Yet, the current Guidelines range of six to 12 months imprisonment does not adequately consider the seriousness of this offense.

---

[1] Typically, the United States refrains from identifying cooperating defendants publicly. The defendant, however, has referenced his cooperation himself publicly both in court at the defendant's hearing on the violation of his pretrial release and in at least one media interview. (*See* Rebecca Haw Allensworth, *Licensed to Pill* (July 21, 2020), https://www.nybooks.com/daily/2020/07/21/licensed-to-pill/

2

The defendant's behavior in the instant case is compatible with the defendant's past criminal conduct, which is uniquely troubling. In 2013, the defendant was arrested for drug offenses relating to opioids, marijuana, and amphetamines. (Doc. 21, Revised PSR, ¶53, pg. 10.) The defendant also possessed a firearm during that offense. (*Id.*) The case involved LaPaglia's prescribing practices. (*See id.* at pg. 12.) The defendant pleaded *nolo contendere*, was placed on diversion, completed his diversion program, and lost his DEA registration number. (*Id;* ¶73, pg. 14.)

The defendant went on to work at Watauga Recovery Center (he was later terminated) and Express Health Care, in Harriman, Tennessee. Both clinics are Suboxone clinics that have been under investigation for illegal drug distribution. *See United States v. Robert Taylor, et al.*, EDKY Case No. 6:21-cr-13; *Raided Addiction Recover Center has History of Donating to State Lawmakers*, https://www.knoxnews.com/story/news/politics/2018/05/10/ice-raid-watauga-recovery-centers-tennessee-lawmakers-donations/599087002/. Nonetheless, the defendant retains his medical license.[2] (Doc. 21, PSR, ¶74, pg. 15.)

Perhaps emboldened by the lack of any serious consequence, the defendant continued his disturbing conduct while on pretrial release—once again using his medical license. The defendant, while flaunting his valid medical license, began his very own concierge medical service- meeting patients in their homes to administer supposed COVID-19 tests. (Doc. 45, R & R Modifying Conditions of Release, pg. 2.) According to one patient, the defendant had no

---

[2] In addition to the instant case, the defendant has been involved in several controversies involving his practice of medicine. (*See* doc. 21, PSR, ¶¶ 70-73) (noting the defendant's licensing troubles in North Carolina after having an inappropriate conversation with a minor; and the denial of the defendant's application to practice medicine and surgery in Pennsylvania); *see also, Booker v. LaPaglia*, 617 Fed. App'x 520 (6th Cir. 2015) (discussing LaPaglia's role in paralyzing an arrestee to perform a warrantless search of the arrestee's rectum.)

3

working thermometer, no otoscope, no gloves, no mask.  (*Id.* at pg. 2-3.)  The defendant did have a bag of unmarked pills which he poured unmarked pills into unmarked bottles and gave them to the patient.  (*Id.* at pg. 2-3.)  The defendant correctly pointed out that this conduct is not illegal because, the defendant is licensed to practice medicine.  That simple fact has the defendant shocking access to potential patients.  Thus, the defendant has been using his medical license, training, and background as both a sword and a shield.  Accordingly, the two-level enhancement for abuse of trust in this case is inadequate to address the full nature and circumstances of his conduct.

As outlined in the magistrate judge's Report and Recommendation modifying the conditions of his pretrial release, the court found, by clear and convincing evidence that the defendant lied to probation and then falsified a medical document to cover it up.  (Doc. 45, R & R Modifying Conditions, pg. 7.)  The defendant, after being asked to submit to drug testing, claimed to be quarantining after testing positive for COVID-19.  (*Id.* at).  When the probation officer requested documentation, the defendant submitted a falsified form.  (*Id.*)  Lying to a probation officer to avoid a drug screen is one matter, but to falsify a medical document is beyond the pale.

As a result of the defendant's deceitful conduct, the defendant's cooperation potential has been destroyed; he will not be used as a witness against his co-conspirator.[3]  Instead, the United States must re-evaluate that case and use significant time and resources to determine the best path forward.  Consequently, the United States has no intention of seeking a downward departure on behalf of the defendant, because the defendant is wholly underserving of such a motion.

---

[3] Charles Brooks was charged separately.  *See United States v. Brooks*, EDTN, Case No. 3:19-cr-51.  Brooks' trial is set for May 25, 2021.

Importantly, the defendant, has escaped any serious consequence for his past conduct. A fact that has perpetuated the risk the defendant poses to the community. By continually misusing his medical license, and by deceiving this Court through falsified documents and lies to his probation officer, the defendant has demonstrated a troubling and dangerous pattern of deceit that entitles him to harsher sentence than his current Guidelines contemplate. Accordingly, the United States recommends that the Court vary upward from the advisory Guidelines range and sentence the defendant to at least 18 months' imprisonment.

Respectfully submitted this 19th day of March 2021.

                                          FRANCIS M. HAMILTON III
                                        ACTING UNITED STATES ATTORNEY

            By:    *s/Anne-Marie Svolto*
                    ANNE-MARIE SVOLTO, BPR# 025716
                    Assistant United States Attorney
                    800 Market Street, Suite 211
                    Knoxville, Tennessee 37902
                    (865) 545-4167
                    anne-marie.svolto@usdoj.gov